**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------

PAOLO ROBERTI, FENG JINGXIN, LI JINWEI, LI ZIHAO, and LAWRENCE ALKANO, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

POMDOCTOR, LTD., ZHENYANG SHI, LI XU, COGENCY GLOBAL, INC., and JOSEPH STONE CAPITAL, LLC,

Defendants.

------------------------------------------------------

No. 1:26-cv-01013-RA-SDA

**CLASS ACTION**

**ORAL ARGUMENT REQUESTED**

# REPLY IN SUPPORT OF POMDOCTOR DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

GIBSON, DUNN & CRUTCHER LLP
Craig Varnen (*pro hac vice*)
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
cvarnen@gibsondunn.com

Jason J. Mendro
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
jmendro@gibsondunn.com

*Attorneys for Defendants PomDoctor, Ltd., Zhenyang Shi, and Li Xu*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 2
I. Plaintiffs Fail to Plead a Section 11 Claim ..... 2
A. Plaintiffs Fail to Plead Any Item 3(D) and Item 5 Violation ..... 2
1. PomDoctor Has No Duty to Disclose Generic Susceptibility to Third-Party Manipulation ..... 2
2. The Registration Statement Disclosed the Facts on Which Plaintiffs' Theory Rests ..... 5
3. Plaintiffs Plead No Facts Showing Actual Knowledge ..... 6
4. The Alleged Omissions Were Immaterial ..... 7
B. Plaintiffs Fail to Plead That the Volatility Risk Factor Was False or Misleading ..... 8
1. The Volatility Risk Factor Was Not an Actionable Half-Truth ..... 8
2. Public Facts about Joseph Stone Are Not Material Omissions ..... 10
C. Negative Causation Appears on the Face of the Complaint ..... 10
II. Plaintiffs' Section 15 Claim Fails ..... 11
CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)....5

*Baxter v. MongoDB, Inc.*,
832 F. Supp. 3d 214 (S.D.N.Y. 2026)....8

*Bruder v. Plug Power Inc.*,
2026 WL 2905418 (N.D.N.Y. Sept. 28, 2026)....9

*In re Didi Glob. Inc. Sec. Litig.*,
2024 WL 1119483 (S.D.N.Y. Mar. 14, 2024)....9

*Emergent Capital Investment Management LLC v. Stonepath Group, Inc.*,
343 F.3d 189 (2d Cir. 2003)....10

*Garnett v. RLX Tech. Inc.*,
632 F. Supp. 3d 574 (S.D.N.Y. 2022)....10

*Gimpel v. Hain Celestial Grp., Inc.*,
156 F.4th 121 (2d Cir. 2025)....8

*Gutman v. Lizhi Inc.*,
633 F. Supp. 3d 681 (E.D.N.Y. 2022)....6

*In re Hub Cyber Security Ltd.*,
2025 WL 872078 (S.D.N.Y. Mar. 20, 2025)....6, 7

*Hutchison v. Deutsche Bank Sec. Inc.*,
647 F.3d 479 (2d Cir. 2011)....8

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)....7

*Kronfeld v. Trans World Airlines, Inc.*,
832 F.2d 726 (2d Cir. 1987)....10

*Lian v. Tuya Inc.*,
2024 WL 966263 (S.D.N.Y. Mar. 5, 2024)....6, 7

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
265 F.R.D. 106 (S.D.N.Y. 2010)....3

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)....3, 10

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
799 F. Supp. 3d 310 (S.D.N.Y. 2025)....9, 11

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
681 F.3d 114 (2d Cir. 2012)....................6, 7

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020)....................6

*Qiao v. Xiao-I Corp.*,
2026 WL 2279623 (S.D.N.Y. Aug. 7, 2026)....................6

*Rubinstein v. Credit Suisse Grp. AG*,
457 F. Supp. 3d 289 (S.D.N.Y. 2020)....................6

*Saskatchewan Healthcare Emps.' Pension Plan v. KE Holdings Inc.*,
718 F. Supp. 3d 344 (S.D.N.Y. 2024)....................3

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
2013 WL 944777 (S.D.N.Y. Mar. 12, 2013)....................10

*Sills v. United Nat. Foods, Inc.*,
2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024)....................9

*Singh v. Schikan*,
106 F. Supp. 3d 439 (S.D.N.Y. 2015)....................4, 5

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)....................3

*TCP Diversified Tech. Fund v. Gaotu Techedu Inc.*,
2025 WL 416872 (E.D.N.Y. Feb. 6, 2025)....................9

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)....................11

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
985 F.2d 1190 (2d Cir. 1993)....................5

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)....................8

*Wandel v. Gao*,
590 F. Supp. 3d 630 (S.D.N.Y. 2022)....................6

*Willard v. UP Fintech Holding Ltd.*,
527 F. Supp. 3d 609 (S.D.N.Y. 2021)....................3

*Winter v. Stronghold Digital Mining, Inc.*,
686 F. Supp. 3d 295 (S.D.N.Y. 2023)....................9, 11

*In re WorldCom, Inc. Sec. Litig.*,
346 F. Supp. 2d 628 (S.D.N.Y. 2004)....................4

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....................8, 9

Defendants PomDoctor, Ltd. ("PomDoctor"), Zhenyang Shi, and Li Xu (collectively, the "PomDoctor Defendants") respectfully submit this Reply in support of their Motion to Dismiss the Amended Complaint, Dkt. 70 ("Mot." or "Opening Brief"), and in response to Plaintiffs' Opposition, Dkt. 81 ("Opp." or "Opposition").

**PRELIMINARY STATEMENT**

The Opposition confirms the defect at the heart of this case: Plaintiffs cannot identify a material fact that PomDoctor was required to disclose but did not. The Complaint alleges that "the Registration Statement failed to disclose the specific and heightened risk that PomDoctor ADSs were susceptible to artificial inflation through coordinated promotional activity," based on three categories of facts: (a) "PomDoctor's low-float ADS structure, newly listed China-based issuer status, and concentrated insider voting control"; (b) Joseph Stone's "then-current risk profile"; and (c) "Joseph Stone-specific facts" about its allocation, distribution, and supervisory practices. ¶¶ 103, 112. The Opposition retreats from all three. It acknowledges that the Complaint "does not allege that PomDoctor hid" the structural facts, Opp. 11, and no longer contends that Joseph Stone's risk profile or practices were themselves omitted facts—only that they "contributed" to the structural risk. *Id.* at 8, 14.

The "omission" that remains is not a fact but a non-actionable characterization: what disclosed features of an offering, sold by a disclosed underwriter with a public regulatory record, "meant in combination for the securities [PomDoctor] was selling." *Id.* at 11. In essence, Plaintiffs seek a rule requiring every issuer with certain disclosed characteristics to warn that someone, someday, might manipulate its stock. The securities laws require no such disclosure—and to defend even that misguided theory, the Opposition relies on theories and materials the Complaint never mentions.

Plaintiffs' theory fails for the reasons set out in the Opening Brief. Neither Item 105 nor Item 303 required the disclosure Plaintiffs demand: the alleged "susceptibility" is, on Plaintiffs' own sources, a risk shared by an entire market segment, and the securities laws do not require an issuer to editorialize about disclosed facts or forecast wrongdoing by strangers. Every structural fact on which the theory rests—the float, the newly listed China-based issuer, the concentration of voting control, Joseph Stone's role, the prospect of sharp price swings unrelated to performance—was disclosed, as the Opposition freely admits. Plaintiffs plead no facts showing that PomDoctor knew of any undisclosed risk or trend and now concede that their confidential witnesses are not offered for that purpose. And the alleged omissions were immaterial—a point the Opposition answers only with a going-concern theory the Complaint never pleaded.

Plaintiffs' half-truth theory fares no better. A warning that the ADS price was likely to be volatile is not a representation that no one would ever attempt to manipulate it. The Complaint's own account of the loss—a collapse in the ADS price "when promotional support ended"—defeats any causal link to the Registration Statement. ¶ 127.

The Complaint should be dismissed with prejudice.

## ARGUMENT

## I. Plaintiffs Fail to Plead a Section 11 Claim[1]

### A. Plaintiffs Fail to Plead Any Item 3(D) and Item 5 Violation

#### 1. PomDoctor Has No Duty to Disclose Generic Susceptibility to Third-Party Manipulation

As the Opening Brief explained, Items 105 and 303[2] reach risks and trends *specific to the*

---

[1] The Complaint fails under Rule 8(a) or 9(b). Mot. 8 n.2 *and* Defendant Joseph Stone Capital, LLC's Reply Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint ("JSC Reply"), Part I.

[2] As in their Opening Brief, the PomDoctor Defendants refer to Item 105 and Item 303 of Regulation S-K as shorthand for Item 3(D) and Item 5 of Form 20-F, which govern PomDoctor's Registration Statement and are

*issuer*, not those common to a market segment. Item 105 discourages registrants from presenting "risks that could apply generically to any registrant or any offering" as risks specific to the issuer, Mot. 11–12, and omissions liability attaches only to risks "specific to" the issuer, not those "present throughout the markets." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 363–64 (2d Cir. 2010). And the SEC, which requires disclosure of directors' and officers' disciplinary history, has never required it for underwriters. Mot. 12–13.

The Opposition responds that the risk here was offering-specific because it arose from "a 4% float, priced at $4.00 and sold entirely through a single retail broker-dealer," that issuers with broad floats and syndicated underwriters face no such risk, and that regulators have recognized the hazard. Opp. 2, 7, 15–17. The regulatory materials on which Plaintiffs rely (most of which post-date the IPO), Opp. 15–17, 24 & nn.7–10, appear nowhere in the Complaint and, even if judicially noticed, may be considered only for the fact of their publication, not for the truth of their contents or to supply allegations the Complaint lacks.[3] *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 416, 425 (2d Cir. 2008). In any event, those materials prove Defendants' point: the SEC release Plaintiffs cite reports that 143 of the 151 China-based companies that completed Nasdaq IPOs between August 2022 and April 2025 raised less than $25 million, and the FINRA notice and Nasdaq proposal address every member firm and an entire category of issuers. Opp. 16. A profile that fits 143 of 151 issuers is, by definition, generic. Nor do Plaintiffs offer a limiting principle.

---

analyzed under the same rubric. Mot. 9 n.3; *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 619 n.5 (S.D.N.Y. 2021).

[3] Plaintiffs cannot rely on documents "not referenced in the complaint," *Saskatchewan Healthcare Emps.' Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 376 (S.D.N.Y. 2024), or "shore up a deficient complaint through extrinsic documents submitted in opposition," *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010).

Under Plaintiffs' logic, every issuer of a thinly traded security must warn that unknown third parties might one day manipulate its stock—a warning Item 105 itself discourages.

Plaintiffs' retreat on Joseph Stone confirms that there is no omitted fact that PomDoctor was required to disclose. Having pleaded Joseph Stone's "risk profile" and "red flags" as omitted facts, ¶¶ 103, 112, Plaintiffs now disclaim any contention that the record "had to be recited," Opp. 14, conceding the Opening Brief's showing that no provision of Form 20-F or Regulation S-K required PomDoctor to catalog a third party's public regulatory record. Mot. 10–13. Their only rejoinder—that facts about an underwriter "can constitute material omissions, even where no regulation expressly compels the disclosure," Opp. 14—misreads *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 688–89 (S.D.N.Y. 2004), which concerned an underwriter's undisclosed conflicts of interest *in the very offering at issue*, not unrelated FINRA disclosure events.

Plaintiffs' fallback—that PomDoctor at least had to explain what the disclosed facts "meant in combination," Opp. 11—fails for the same reason: no Item requires an issuer to draw negative inferences from facts it has disclosed. *Singh v. Schikan* is on point. 106 F. Supp. 3d 439 (S.D.N.Y. 2015). There, plaintiffs alleged that a drug developer's registration statement failed to disclose that differences between its Phase II and Phase III trials made the later trial likely to fail. *Id.* at 447–48. As here, plaintiffs conceded that the registration statement disclosed "the key details of both studies"; their complaint was that it did not "connect" those facts to the adverse conclusion. *Id.* at 447. The court dismissed: because "no facts per se were omitted," plaintiffs sought only "an extra level of disclosure spelling out inferences and drawing conclusions for investors," and "defendants were not required to draw out such inferences or to make such forecasts." *Id.* A registration statement "does not fail simply because it does not use the eye-catching or negative phrasing that plaintiffs would have wished." *Id.* at 448. Yet that is precisely what Plaintiffs

demand: not disclosure of any fact, but a particular gloss on facts that were already disclosed. Opp. 11, 14.

**2. The Registration Statement Disclosed the Facts on Which Plaintiffs' Theory Rests**

The Registration Statement disclosed each of the structural facts on which Plaintiffs' susceptibility theory rests: the small float and untested trading market, PomDoctor's status as a newly listed China-based issuer, concentrated insider control, Joseph Stone's role in pricing and distributing the ADSs as firm-commitment underwriter, and the possibility that trading activity would move the ADS price away from fundamental value. Mot. 15–17; Opp. 10–11. The Opposition's contention that PomDoctor also needed to disclose what those facts "meant in combination," Opp. 11, fails for the reasons above. *Supra* Part I.A.1.

Plaintiffs' fallback—that the disclosed facts were "buried in a 250-page prospectus," Opp. 10—misdescribes the law and PomDoctor's disclosure. *See United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993) (information "buried" in "unrelated discussions" is not part of the total mix of information); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 453 & n.11 (S.D.N.Y. 2005) ("vaguely worded footnotes" omitting the identity, size, and effect of guaranteed vendor-financing obligations were inadequate). Here, the Registration Statement stated under the heading "THE OFFERING" that 5,000,004 ADSs (5,750,004 with the over-allotment) would be outstanding after the offering, set out the resulting ownership percentages in the capitalization and dilution tables, and warned in bold, italicized text that "[t]here has been no public market for our shares or ADSs prior to this offering, and you may not be able to resell our ADSs at or above the price you paid, or at all." Ex. 1 at 20, 62, 78. Facts "set out logically under appropriate headings, alongside related information" are not "buried." *Singh*, 106 F. Supp. 3d at 448.

### 3. Plaintiffs Plead No Facts Showing Actual Knowledge

Both Items require that the issuer actually know of the omitted risk or trend at the time of the offering, and the Complaint pleads no such knowledge. Plaintiffs do not dispute that Item 303 requires actual knowledge. Opp. 17 n.11, 20. Their contention that Item 105 does not require actual knowledge rests on *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *10 (S.D.N.Y. Sept. 27, 2020) and *Gutman v. Lizhi Inc.*, 633 F. Supp. 3d 681, 690 (E.D.N.Y. 2022), the minority view. Opp. 17 n.11. Most courts in this District have since held that Item 105, like Item 303, requires actual knowledge. *See, e.g.*, *Lian v. Tuya Inc.* ("*Lian I*"), 2024 WL 966263, at *9 (S.D.N.Y. Mar. 5, 2024); *Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022); *Qiao v. Xiao-I Corp.*, 2026 WL 2279623, at *17 (S.D.N.Y. Aug. 7, 2026). *Rubinstein v. Credit Suisse Grp. AG*, which Plaintiffs say "address[es] Item 303 only," Opp. 17 n.11, required "actual knowledge of an existing trend, event, or risk to allege violations of Section 303 *and* 105." 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020) (emphasis added). And *In re Hub Cyber Security Ltd.* adopted "the 'majority view' that 'an issuer must know of the relevant risk factor to be held liable for a violation of Item 105'" and dismissed the Item 105 claim on that ground. 2025 WL 872078, at *17 (S.D.N.Y. Mar. 20, 2025).

Plaintiffs fail to plead the required knowledge. They concede that their confidential witnesses are not offered "to show PomDoctor's actual knowledge." Opp. 20; JSC Reply, Part IV. That leaves three theories: PomDoctor knew the structure of its own offering, it could have read BrokerCheck, and it should have anticipated a scheme by unknown third parties. None suffices.

***Knowledge of the offering's structure.*** Plaintiffs invoke *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114 (2d Cir. 2012) for the proposition that only the "uncertainty," not its outcome, must be known. Opp. 20–21. True, but the uncertainty there was concrete and issuer-specific: Ikanos's two largest customers, representing 72% of its revenue, had reported that

its chips were defective, the board had discussed the problem, and company representatives had flown to Japan to address it. *Ikanos*, 681 F.3d at 116–17, 121–22.[4] Here, Plaintiffs plead that PomDoctor knew the size of its float, its offering price, and the identity of its underwriter. ¶¶ 16, 35, 44. But knowing the features of one's own offering is not knowledge of an *uncertainty*; on Plaintiffs' logic, every issuer knows every risk inherent in every disclosed fact.

***Joseph Stone's regulatory history.*** Plaintiffs conflate Section 11's "knowable" standard with Item 303's actual-knowledge requirement. Opp. 20. Item 303 reaches only trends or uncertainties that the registrant "actually knows of when it files the relevant report with the SEC. It is *not* enough that it should have known." *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016) (emphasis added). Allegations that an issuer could have found public reports about a third party "had it 'looked,'" Opp. 20, do not establish knowledge. *See Lian I*, 2024 WL 966263, at *6–7.

***Third-party manipulation.*** The only PomDoctor-specific event—the promotional campaign—did not exist at the time of the IPO. Even under Section 11's "knowable" standard, "the relevant event" must have "already transpired." *Hub Cyber*, 2025 WL 872078, at *15. A scheme that began weeks after the IPO had not transpired and could not have been known to PomDoctor.

#### 4. The Alleged Omissions Were Immaterial

The Opening Brief showed that a third party's regulatory record has no bearing on PomDoctor's financial condition or results of operations. Mot. 19–21. The Opposition offers no

---

[4] Plaintiffs note that the Opening Brief cited the 2008 *Panther Partners* decision, 538 F. Supp. 2d 662 (S.D.N.Y. 2008), which the Second Circuit later faulted for construing the complaint "too narrowly." Opp. 17, 21. The Opening Brief cited that decision for its disclosed-risk and hindsight holdings, Mot. 22, which the 2012 decision—reviewing a later order denying leave to amend on remand, 681 F.3d at 117, 122—did not disturb.

answer on the merits beyond a going-concern theory that the Complaint never pleads. *Compare* Opp. 18–19, *with* ¶ 109. That theory may not be added through an opposition brief, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), and fails in any event. The Registration Statement disclosed the going-concern qualification and the importance of raising equity, Ex. 1 at 25, 95. A chain of contingencies dependent on strangers' future misconduct is not a "known" uncertainty "reasonably likely" to have a material effect on liquidity. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 485 (2d Cir. 2011). That materiality is rarely resolved on the pleadings, Opp. 22–23, does not help where the pleaded nexus to the issuer's finances is a threadbare legal conclusion. ¶ 109.

### B. Plaintiffs Fail to Plead That the Volatility Risk Factor Was False or Misleading

#### 1. The Volatility Risk Factor Was Not an Actionable Half-Truth

Plaintiffs contend that because the volatility risk factor addressed the forces that could move the ADS price, PomDoctor was required to add that coordinated promotion by third parties could inflate it, and that omitting that risk rendered the factor "misleadingly incomplete." Opp. 8–10. But a true statement is actionable by omission only if a reasonable investor would understand it as an implied representation on the specific omitted subject. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 240 (2d Cir. 2016); *Gimpel v. Hain Celestial Grp., Inc.*, 156 F.4th 121, 143 (2d Cir. 2025). A statement that says nothing about a subject implies nothing about it,[5] and Plaintiffs acknowledge that nothing in the volatility risk factor concerns the underwriter or coordinated buying.[6] Opp. 10. Warnings about what moves a stock price are not a promise that no one will manipulate it. *Baxter*

[5] Plaintiffs' observation that none of the fifteen enumerated "factors specific to [PomDoctor's] own operations" concerns manipulation, Opp. 4, 10, proves the point: the alleged susceptibility is not offering-specific. *Supra* Part I.A.1.

[6] The volatility risk factor warned that the price was "likely to be volatile," listed "factors specific to our own operations," and cautioned that the market "experiences price and volume fluctuations that are often unrelated or disproportionate to the operating performance of companies like us." ¶ 111.

*v. MongoDB, Inc.*, 832 F. Supp. 3d 214, 246 (S.D.N.Y. 2026) (statements "distinct and afield from the fact omitted" create no duty to disclose it).

Every case Plaintiffs cite in which a risk factor was held misleading involved an omitted risk that had already materialized when the issuer spoke. *Winter v. Stronghold Digital Mining, Inc.*, 686 F. Supp. 3d 295, 306–07 (S.D.N.Y. 2023) (unpaid invoices and outages had already blocked shipments); *Bruder v. Plug Power Inc.*, 2026 WL 2905418, at *14 (N.D.N.Y. Sept. 28, 2026) (company already failing to pay suppliers); *Sills v. United Nat. Foods, Inc.*, 2024 WL 4188324, at *2, *9 (S.D.N.Y. Sept. 13, 2024) ("negative elephant in the room" was forward buying the company *was already doing*); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 799 F. Supp. 3d 310, 345 (S.D.N.Y. 2025) (investigation had already led to detention of executives); *In re Didi Glob. Inc. Sec. Litig.*, 2024 WL 1119483, at *14–15 (S.D.N.Y. Mar. 14, 2024) (regulator had already directed delay of IPO); *TCP Diversified Tech. Fund v. Gaotu Techedu Inc.*, 2025 WL 416872, at *8 (E.D.N.Y. Feb. 6, 2025) (regulatory directive had already issued). Here, the only PomDoctor-specific event began weeks after the IPO.

The Opposition also invents a new "selective disclosure" theory: that because the Registration Statement warned of "short seller attacks," PomDoctor had to warn of every other form of third-party trading activity. Opp. 8–9. But the Complaint never references the short-seller risk factor, and the theory cannot be raised for the first time in an opposition brief. *Wright*, 152 F.3d at 178. The theory fails on the merits regardless. The "short seller" risk factor addresses a reputational hazard—"negative opinions and allegations" that PomDoctor would have to "expend a significant amount of resources to investigate" and rebut. Ex. 1 at 63–64. A warning about bearish publicity is not a representation about aftermarket buying by anonymous promoters, and a

true statement on one subject does not create a "generalized duty" to disclose every "related subject[]." *Morgan Stanley*, 592 F.3d at 366.

### 2. Public Facts about Joseph Stone Are Not Material Omissions

The Opposition contends that Joseph Stone's FINRA disclosure events were not part of the "total mix" because investors would have had to search BrokerCheck for it, and that PomDoctor's reliance on its public availability is a fact-bound "truth-on-the-market" defense. Opp. 23. But Plaintiffs themselves plead that Joseph Stone's FINRA disclosure events were public, ¶¶ 69–76, so there is no fact to try. Plaintiffs' authority, *Kronfeld v. Trans World Airlines, Inc.*, found only a triable issue at summary judgment where a prospectus had discussed the omitted subject "in some detail" and the omitted fact was a pending corporate study of the issuer's parent. 832 F.2d 726, 735–36 (2d Cir. 1987). Here, no statement put Joseph Stone's record in play, and no Item required PomDoctor to recite it. *Supra* Parts I.A, I.B.1. And publicly available information about a third party does not alter the total mix. *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 607 (S.D.N.Y. 2022); JSC Reply, Part III.B. Plaintiffs' rejoinder that the practices described by their witnesses were not on BrokerCheck, Opp. 4, 23, only underscores their dilemma: those practices were either public, and so not omitted, or unknown to PomDoctor, and so not disclosable.

## C. Negative Causation Appears on the Face of the Complaint

Negative causation may be resolved on the pleadings where "apparent on the face of the complaint." *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9 (S.D.N.Y. Mar. 12, 2013). It is apparent here: the Complaint alleges that the price collapsed "when promotional support ended," ¶ 127, and identifies no corrective disclosure revealing any statement in the Registration Statement to be false or misleading. Plaintiffs' authorities involved the opposite. In *Emergent Capital Investment Management LLC v. Stonepath Group, Inc.*, the issuer's own insiders ran the pump-and-dump and concealed their history and control, so the collapse was a "foreseeable

consequence" of their own scheme. 343 F.3d 189, 193, 197 (2d Cir. 2003). In *Orient Plus*, the registration statement "disguised the very risk" that later materialized. 799 F. Supp. 3d at 352–53. And *Winter* involved concealed information that, "when disclosed, negatively affected the value of the security." 686 F. Supp. 3d at 311. Plaintiffs allege neither a corrective disclosure nor any Defendant's participation in, knowledge of, or communication with the promoters.

## II. Plaintiffs' Section 15 Claim Fails

Because Plaintiffs fail to plead a Section 11 violation, their Section 15 claim fails as well. Mot. 27.

## CONCLUSION

For the foregoing reasons and those stated in the Opening Brief, the Complaint should be dismissed with prejudice. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505–06 (2d Cir. 2014) (dismissal with prejudice appropriate where plaintiffs failed to show "how amendment would cure the pleading deficiencies").

Dated: November 20, 2026

Respectfully submitted,

By: */s/ Craig Varnen*

GIBSON, DUNN & CRUTCHER LLP

Craig Varnen (*pro hac vice*)
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
cvarnen@gibsondunn.com

Jason J. Mendro
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
jmendro@gibsondunn.com

*Attorneys for Defendants PomDoctor, Ltd., Zhenyang Shi, and Li Xu*

**CERTIFICATE OF COMPLIANCE**

I, Craig Varnen, hereby certify that this memorandum of law complies with the type-volume limitation of Local Rule 7.1(c) because it contains 3,497 words, excluding the parts of the brief exempted by Local Rule 7.1(c).

Dated: November 20, 2026

*/s/ Craig Varnen*
Craig Varnen